SAMUEL B. POMEROY *et al.*, Appellants, *v.* GEORGE R. ROBERTS, Appellee.

### APPEAL FROM COOK COUNTY COURT OF COMMON PLEAS.

A principal is only responsible for the purchases of his agent when he authorizes him to make the purchase, or when he permits him to make purchases, knowing that the seller parts with his property on the responsibility of the principal, and not on the credit of the agent.

THIS was an action of assumpsit, commenced in the Cook County Court of Common Pleas, by summons, issued in favor of the above named appellee, against the said appellants. The declaration is on the common counts: First, against the defendants, as partners, doing business under the firm name of S. B. Pomeroy & Co. Second, against them as partners doing business under the firm name of C. S. Parmlee. With the declaration is filed an account for lumber sold by plaintiff to defendants, amounting to $395.06. The defendants filed an affidavit of merits, with the plea of the general issue; also the affidavit of one of the defendants, denying that they were copartners, doing business in the name of C. S. Parmlee. The case was tried before a jury at the September term of the common pleas court, 1856, J. M. WILSON, Judge, presiding.

There was a verdict and judgment for the appellee for $395.06. A motion for a new trial was denied.

HOYNE and MILLER, for Appellants.

SHUMWAY, WAITE and TOWNE, for Appellee.

CATON, J. We find no complaint with the instructions of the court, but after a careful examination of the testimony, we are satisfied that the jury misapplied the law to the facts and found a wrong verdict, which should have been set aside. The facts, as uncontradicted and uncontroverted, are these. The defendants, on the first day of January, sent Parmlee to Geneseo, as their agent, to buy produce for them, and from time to time remitted him funds as he required, and charged him with the amount. With these funds he purchased grain and shipped it to Chicago to the defendants, with which they credited him at prices paid for it, of which he advised them weekly. During the winter of 1854–5, he also bought pork for them and shipped it in the same way. During the summer of 1854, Parmlee advised them at what prices he could sell lumber and salt and requested them to send him some. Accordingly, during that season, they sent him four car loads of lumber and some salt, which he sold for them during that season, excepting some culls of the lumber, which were left over until the next season. There is no doubt, that this is the extent of the business arrangements between those parties, and the extent of the authority conferred on the agent by the defendants. Parmlee himself does not pretend that he was ever in any way authorized by the Pomeroys to buy anything for them, or on their account, excepting grain and pork.

Some time in March, 1855, Parmlee entered into an agreement of copartnership with one Crosby, for the purpose of conducting the lumber business in Geneseo, and that firm in the name of Parmlee and Crosby opened an account with the plaintiff at Chicago, for the purpose of supplying their lumber yard at Geneseo with lumber, which continued in their names, till some time in April, after which it was continued in the name of C. S. Parmlee alone, in whose name the lumber in controversy was purchased by Parmlee in April and May, 1855. At one time during the spring of 1855, Parmlee mentioned to the book keeper of the defendants, that by reason of his having made so much that day, he had bought a lot of lumber and could make a handsome thing out of it. This was in the defendants' office in Chicago, but it does not appear that either of the defendants were present, or that it was expected or designed to be communicated to them, or that it was supposed by any one that they had any interest in it. Indeed, we are satisfied that no other legitimate conclusion can be drawn from the evidence, than that the defendants never knew anything about the lumber transactions of Parmlee in 1855, or that he ever purchased a foot of lumber at any time for the purpose of sale, either on his own account or theirs, and certain it is, that they never author-

ized him either expressly or impliedly to purchase any lumber on their account. On the first of March, 1855, the defendants sent a book keeper to Geneseo, to keep the books there, under the direction of Parmlee. He rendered such an account or made a report of the state of the accounts at Geneseo, to the defendants monthly. In these reports, no mention whatever is made of the lumber transactions. They were not charged with money paid out for lumber, nor were they credited with money received for lumber, although it appears that lumber was purchased and paid for, and lumber sold, during the time of these reports, by Parmlee and Crosby and by C. S. Parmlee. Now, in the face of all these facts, after he has been prosecuted criminally by the defendants, he swears, that he entered into the partnership with Crosby and carried on the lumber business, on account of the defendants, although he does not pretend that he ever explained to Crosby, his partner, that the defendants had any sort of interest in that lumber business. Now, in this state of the testimony, one of two conclusions is inevitable; either that Parmlee has sworn to what is not true, or that he has proved himself to be a dishonest man and an unfaithful agent. He takes in a partner, buys and sells lumber, contracts debts and receives proceeds of sales, confessedly, without consulting the defendants, and without a shadow of authority from them, makes no mention of these receipts and expenditures in his reports to them. And now, when the enterprise proves disastrous, and he himself proves a defaulter, in the legitimate business of his agency and is prosecuted therefor, he, for the first time, pretends that all of this lumber business was on the defendants' account. Had this lumber business proved profitable, will any sane man believe that the defendants would ever have heard of it, or seen any of the profits?

The defendants can be liable in this case only upon one of two assumptions; either that they authorized Parmlee to purchase the lumber on their account, or that they knowingly allowed Parmlee to purchase it on his own account, but upon their credit, whereby the plaintiff was induced to part with his property on their responsibility and not on the credit of Parmlee. Now there is absolutely no evidence to sustain either of these assumptions. Parmlee himself does not pretend that he ever had any authority, either express or implied, from the defendants, to purchase a foot of lumber on their account, and the whole evidence in the case shows affirmatively that they never gave him any such authority, and never had any reason to suppose, that he ever attempted to exercise any such authority, or that he ever even professed to exercise any such authority for them. All there is about it is, that he says he

did enter into the arrangement with Crosby for them, but he does not pretend that he had any authority to do so, or that he ever disclosed any such intention either to the plaintiff or the defendants, or to Crosby himself, or even any one else. If he really had any such purpose it was securely locked up in his own bosom, until it was disclosed on this trial. This mere secret, mental purpose, if it was really entertained, could not bind the defendants.

As to the second supposition, that the plaintiff was misled by appearances, sanctioned by the defendants, and thereby induced to sell the lumber to Parmlee on the credit and responsibility of the defendants, it is not even contended for. He does not pretend that he supposed the defendants had any concern in it, at the time of the sale, or that he did not sell it on the responsibility of Parmalee alone. When this testimony is carefully examined and properly understood, there is really no evidence to sustain this verdict. It is only practicable in an opinion, without making it unreasonably long, to do more than glance at the main features of the testimony, and, in general, state conclusions established by the evidence rather than go into a detail of the evidence itself.

The judgment must be reversed and the cause must be remanded for another trial.

*Judgment reversed.*